[No. 30734. Department One. May 28, 1949.]

FREDERICK W. BUFF, *Appellant*, v. C. E. H. MALOY *et al.*, *Respondents.*[1]

[1]Reported in 206 P. (2d) 805.

*Wright, Booth & Beresford,* for appellant.

*E. P. Whiting,* for respondents.

HILL, J.—This is an appeal from a judgment of the superior court dismissing an action to set aside certain conveyances, and, instead, quieting title to the property conveyed in the grantee named in the conveyances. The appellant is an accountant who, in 1941, retained respondent C. E. H. Maloy (who will hereafter be referred to as though he were the only respondent), an attorney then practicing in this state but now located in California, to defend one action and to prosecute two others.

In October and November, 1941, appellant conveyed to the respondent fourteen lots and a portion of another tract, having a total valuation fixed by the respondent at sixty-five hundred dollars, as compensation for respondent's services rendered and to be rendered in connection with the three actions. (Appellant says the portion of a tract referred to was conveyed with the understanding that it would be sold to cover the payment of costs, and that he was to receive two hundred fifty dollars from the proceeds of the sale.)

The suit against appellant was by Ferris & Hardgrove, a corporation, for $6,499.23 due on an account. The suits in which appellant was plaintiff were against Ben B. Ehrlichman for fifty thousand dollars for an alleged slander on December 7, 1940, and against the United National Corporation for one hundred fifty thousand dollars for an alleged libel on August 31, 1941. The statutory limitation for bringing suit in both the slander and the libel actions was two years. Rem. Rev. Stat., § 160. The slander suit was filed December 23, 1941, and the libel action on October 29, 1941. Both were thereafter voluntarily dismissed and

new suits commenced in each cause of action on November 27, 1942.

After a three-day trial to a jury, the decision in the Ferris & Hardgrove case was adverse to appellant; and it was appealed to this court, which on March 2, 1944, affirmed the judgment.

On April 5, 1944, appellant and respondent met to discuss the situation in the light of the supreme court decision in the Ferris & Hardgrove case. They are in sharp disagreement as to what occurred on that date. Appellant says that the respondent agreed to "get busy" on the slander and libel cases. Respondent says that he advised the appellant that, in view of the character of the testimony in depositions which had been taken and the result of the Ferris & Hardgrove case, there was no possibility of winning either the libel or the slander case; and that the appellant reluctantly agreed to leave the decision as to further prosecution of the cases to respondent's judgment. In any event, both the libel and the slander suits were dismissed on June 28, 1944, for want of diligent prosecution. The statute of limitations had then run against both actions, and they were lost to the appellant.

Respondent remained in Seattle until July 1, 1945, and appellant consulted him on another matter in May of 1945.

Appellant made his first demand for reconveyance of the lots in October, 1945, and commenced the present action in September, 1946.

The trial court believed the respondent's version of what had occurred at the April 5th meeting, and stated in its oral decision, rendered at the conclusion of the case, that the respondent had carried out the agreement and used his best judgment when he permitted the slander and libel cases to be dismissed; and it is expressly recited in the decree that there was no total or partial failure of consideration.

Appellant vigorously contends that the evidence is overwhelming that he neither knew of nor consented to the respondent's action in permitting the slander and libel cases to be dismissed for want of prosecution. We can agree

that the appellant did not know the details relative to the dismissal for want of prosecution, and that he did not specifically consent to the particular order of dismissal actually entered. But that would still not be inconsistent with respondent's testimony that on April 5th the appellant had agreed to leave it to respondent's judgment whether these actions should or should not be prosecuted. No motion for dismissal was made until May 24, 1944.

Appellant places great reliance on respondent's letter of June 23, 1944, as being inconsistent with appellant's agreement to leave prosecution of or further action in the cases to respondent's judgment. This letter advised the appellant that the libel and slander cases were in line for dismissal, and urged a discussion. What respondent desired to discuss with appellant was not mentioned in the letter; it might have been the effect of the dismissals on the Ferris & Hardgrove judgment, as there had been some talk to the effect that that judgment would not be enforced if the slander and libel actions were not prosecuted. Certainly the letter is not consistent with appellant's version of the April 5th conference, i.e., that respondent had agreed to "get busy" and prosecute the libel and slander actions. Under that theory, respondent, by the letter of June 23rd, would have been calling attention to his own derelictions and inviting a discussion of something that was then inevitable, i.e., the dismissal of the slander and libel cases. While what the respondent had in mind when writing the letter of June 23rd is not made clear, the letter seems to us more consistent with respondent's than with appellant's version of the agreement at the April 5th meeting.

Being of the opinion that appellant did, on April 5, 1944, consent that respondent might use his own judgment in the prosecution of the slander and libel suits, we hold that appellant cannot now complain that respondent thereafter did nothing and permitted the cases to be dismissed, that being in his judgment the best thing to do.

We might stop here and rest the case entirely on the proposition of consent by the appellant and the failure of

proof that the respondent was negligent, but we feel impelled to say that there is little in appellant's position that, to use familiar phraseology, "commends it to the conscience of a chancellor of a court of equity." We mention three phases of appellant's position that seem to us particularly inequitable:

(1) Respondent had tried the Ferris & Hardgrove case in the superior court (a three-day trial), had appealed it to this court and prepared both opening and reply briefs, and had argued it here. Respondent had performed other legal services for appellant, entirely apart from the libel and slander cases, particularly in connection with a suit by minority stockholders of the United National Corporation. Respondent had apparently forestalled a threatened criminal prosecution of the appellant arising out of the facts on which the Ferris & Hardgrove case was based. Respondent had paid taxes on the property conveyed to him, the amount of which the appellant could easily have ascertained at the county treasurer's office.

Without a tender of any compensation for the extensive services performed, or an offer to reimburse for the taxes paid, the appellant demands that the deeds to all of the property conveyed be set aside and that title be quieted in him. Appellant concedes that respondent spent a great deal of time on the litigation in question, but excuses his failure to allow respondent any compensation beyond a two-hundred-fifty-dollar retainer fee in the Ferris & Hardgrove case and an additional fifty dollars in the libel and slander cases (and appellant wants a judgment for the value of the lots in the sum of sixty-five hundred dollars, together with an additional four hundred fifty dollars, as an alternative to setting aside the deeds and quieting title in him) by the assertion of a harsh legal rule which appellant states as follows:

"Negligent failure to perform a contract in its entirety, does not permit the party at fault to collect for those services actually rendered on the basis of *quantum meruit.*"

Reliance on the "pound of flesh" doctrine makes a strange basis for a request for equitable relief.

(2) Appellant states that two lots were conveyed to respondent which, with a two-hundred-fifty-dollar retainer fee previously paid, were to be his fee in the Ferris & Hardgrove case. (It is conceded that this did not cover the appeal to the supreme court.) Appellant also testified that, with one exception, the other lots were conveyed to respondent as his fee in the slander and libel cases.

Despite the fact that appellant says that two lots were conveyed specifically as the fee in the Ferris & Hardgrove case, appellant nevertheless asks that the conveyance of those two lots be set aside and title thereto be quieted in him. Respondent denies that there was any segregation of the lots as fees in any particular cases. But if we accept appellant's own statements at their face value, this, too, presents a strange basis for a request for equitable relief so far as the two lots conveyed as a fee in the Ferris & Hardgrove case are concerned.

(3) By July 5, 1944, appellant knew of the dismissal of the slander and libel suits, but consulted with respondent on another matter in May, 1945. Respondent remained in Seattle until July 1, 1945. Appellant's first demand for a reconveyance of the lots was made on October 23, 1945, but he commenced no action until September 27, 1946. It is not necessary to hold that this was laches barring the action, but, considered in connection with all the other facts and circumstances, it raises a question as to whether the appellant is in court in good faith and with clean hands.

The judgment of the trial court is affirmed.

JEFFERS, C. J., BEALS, STEINERT, and MALLERY, JJ., concur.